UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DAEMON SCHOPPER,

        Plaintiff,          Case No. 1:21-cv-731

v.          Honorable Robert J. Jonker

COUNTY OF EATON et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Eaton County, Crowl, and Wrigglesworth.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Eaton County Jail, in Charlotte, Eaton County, Michigan. Some of the events

about which he complains occurred during his arrest, and the remainder occurred at the Eaton County Jail after he was incarcerated.  Plaintiff sues Eaton County, and Eaton County Jail employees Nurse Rick Thomas, Medical Director William Jenkins, and Sergeant Unknown Crowl.  Plaintiff also sues Eaton County Police K-9 Officer Joshua Turner, and Eaton County Police Road Captain Mark Wrigglesworth.  Finally, Plaintiff names Michigan State Police Trooper Unknown Jupin as a Defendant.

Plaintiff alleges that on February 3, 2021, Defendants Turner and Jupin executed a search warrant on Plaintiff.  Plaintiff states that while he was exiting his girlfriend's apartment, he saw a gray Dodge Caravan pull up and stop abruptly but did not realize that it contained law enforcement.  Plaintiff asserts that he feared for his life and tried to take cover when Defendant Turner ordered the K-9 to apprehend Plaintiff.  Plaintiff fell in the snow as he was turning for cover.  As Plaintiff attempted to rise, he felt the K-9 bite him in the right thigh.  At this point, Plaintiff realized that he was being accosted by police and surrendered, lying with his face down and his hands and feet stretched out.

Plaintiff alleges that Defendants Turner and Jupin failed to call off the K-9 after they saw Plaintiff surrender and allowed the attack to continue for several minutes before sitting on Plaintiff's back and securing his hands.  Defendant Turner then ordered the K-9 to attack Plaintiff's ankle.  Plaintiff claims that at some point during these events Defendant Jupin planted a firearm on him.  Defendants Turner and Jupin refused to allow Plaintiff to be taken to the hospital for his injuries in violation of Eaton County policy.

Plaintiff was transferred to the Eaton County substation for questioning, but Plaintiff refused to cooperate because of his treatment by Defendants Turner and Jupin.  Plaintiff was met by Eaton County Jail staff, including Defendant Thomas.  Plaintiff requested to be taken

to the hospital, but Defendant Thomas ignored the request and told Defendant Crowl that Plaintiff refused treatment. Plaintiff states that he was forced to lie in a holding cell for three days while he was bleeding profusely.

Once Plaintiff was arraigned, he was sent to a quarantine unit where the kiosk was broken, which prevented Plaintiff from sending a kite to medical. On February 22, 2021, Plaintiff was seen by Defendant Jenkins, who immediately ordered Plaintiff to leave health services. Plaintiff kited health care on February 28, 2021, after the kiosk was fixed. By March 14, 2021, Plaintiff's right leg had become infected. Plaintiff was unable to walk and had lost feeling in his right leg. Plaintiff was placed on antibiotics. Although Plaintiff kited health care using the kiosk on numerous occasions, he was told that he refused medical care.

Plaintiff alleges that Defendants Thomas and Jenkins harassed him on numerous occasions when he requested shoes or outside resources. Defendant Jenkins is responsible for arranging outside medical visits to specialists. Plaintiff states that he continues to be denied medical care for his leg, which has lost feeling and causes constant pain.

Plaintiff states that Defendants Turner and Jupin subjected him to excessive force during his arrest, that Defendant Wrigglesworth failed to properly supervise Defendants Turner and Jupin, and that Defendants Turner, Jupin, Thomas, and Jenkins failed to provide Plaintiff with necessary medical attention following his arrest. Plaintiff states that Defendants' conduct violated his rights under federal and state law. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

3

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Respondeat superior

Plaintiff claims that Defendant Wrigglesworth failed to properly supervise and control the conduct of Defendants Turner and Jupin, and that Defendant Crowl failed to properly supervise Defendants Thomas and Jenkins. The Court notes that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Wrigglesworth and Crowl engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### IV. Excessive force

Plaintiff claims that Defendants Turner and Jupin subjected him to excessive force during his arrest. Excessive force claims can be resolved under the Fourth, Eighth and Fourteenth Amendments – the applicable amendment depends on the plaintiff's status at the time of the incident: a free citizen in the process of being arrested or seized; a convicted prisoner; or someone in "gray area[s]" around the two. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013); *Phelps*

5

*v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). When a free citizen claims that a government actor used excessive force during the process of a warrantless arrest, seizure, or investigatory stop, we perform a Fourth Amendment inquiry into what was objectively "reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Lanman v. Hinson*, 529 F.3d 673, 680 (6th Cir. 2008).

In *Aldini v. Johnson*, 609 F.3d 858 (6th Cir. 2010), the Sixth Circuit held that the Fourth Amendment applies to a pretrial detainee after the arrest until the detainee has been arraigned and a judge has found probable cause. If the arrest is made on a warrant (for which a probable cause determination already has been made), any force applied after the arrest itself is not covered by the Fourth Amendment. After a probable cause determination has been made, the standard is the substantive due process standard of the Fourteenth Amendment. *Id.* As noted above, Plaintiff was arrested pursuant to a warrant. Therefore, Plaintiff's excessive force claim is properly analyzed under the Fourteenth Amendment.

In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court held that the use of excessive force on pretrial detainees is measured under the Due Process Clause of the Fourteenth Amendment. The Court rejected a subjective standard, holding that the relevant inquiry is whether the force purposely or knowingly used against the prisoner was objectively unreasonable. *Id.* at 398; *see also Coley v. Lucas Cnty.*, 799 F.3d 530, 538 (6th Cir. 2015) (citing *Kingsley*).

Plaintiff alleges that Defendants Turner and Jupin failed to call off the K-9 after they saw Plaintiff surrender and allowed the attack to continue for several minutes before sitting on Plaintiff's back and securing his hands. Plaintiff also claims that after he was in handcuffs, Defendant Turner ordered the K-9 to attack Plaintiff's ankle. The Court concludes that Plaintiff

6

has alleged sufficient facts to state a Fourteenth Amendment excessive force claim against Defendants Turner and Jupin.

## V.  Denial of medical care

Plaintiff asserts that Defendants Turner and Jupin failed to have Plaintiff treated for his injuries prior to having him taken to the jail to be questioned, in violation of Eaton County policy. Plaintiff also claims that once he was incarcerated at the Eaton County Jail, Defendants Thomas and Jenkins refused to provide him with necessary medical care. "[A] pretrial detainee's right to medical treatment for a serious medical need has been established since at least 1987." *Day v. Delong, et al.*, 358 F. Supp. 3d 687, 700 (S.D. Ohio, 2019) (citing *Estate of Carter v. City of Detroit*, 408 F.3d 305, 313 (6th Cir. 2005); *Heflin v. Stewart County*, 958 F.2d 709, 717 (6th Cir. 1992)).

In *Brawner v. Scott Cnty*, 14 F.4th 585 (6th Cir. 2021), the Sixth Circuit noted that it had "'historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims under the same rubric.'" *Id.*, at 591 (citing *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018)). In *Brawner*, the Court noted that *Kingsley* specifically addressed excessive force claims brought by a pretrial detainee and went on to apply *Kingsley* to a claim involving inadequate medical care for a pretrial detainee. In so doing, the Sixth Circuit went beyond imposing a strictly objective test to create an ostensibly modified deliberate-indifference standard. It held that negligence is not enough. A recklessness standard applies:

> A pretrial detainee must prove "more than negligence but less than subjective intent—something akin to reckless disregard." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc); *see Darnell*, 849 F.3d at 35 ("[T]he pretrial detainee must prove that the defendant-official acted [or failed to act] intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."); *Griffith*, 975 F.3d at 589 (Clay, J., concurring in part and dissenting in part) (explaining that a pretrial detainee must

>prove that the defendant acted "intentionally to ignore [her] serious medical need or recklessly failed to act with reasonable care to mitigate the risk that the serious medical need posed to the pretrial detainee, even though a reasonable official in the defendant's position would have known, or should have known, that the serious medical need posed an excessive risk to the pretrial detainee's health or safety").

*Id.*, at 596–97.

As noted above, Plaintiff alleges that he suffered injuries from being bitten by a K-9 during his arrest, and that the lack of treatment caused the wounds to become infected. Plaintiff states that he is currently suffering from both pain and a loss of sensation in his right leg. Based on the allegations in Plaintiff's complaint, the Court concludes that he has stated a denial of medical care claim under the Fourteenth Amendment against Defendants Turner, Jupin, Thomas, and Jenkins.

## VI.    Claims against County of Eaton

Although Plaintiff names Eaton County as a Defendant in this case, he fails to allege any specific facts regarding the County in his complaint, other than to state that the refusal of Defendants Jupin and Turner to get Plaintiff treatment for his injuries violated Eaton County policy. In order to state a § 1983 claim against Defendant County of Eaton, Plaintiff must identify a specific policy, connect that policy to the County itself, and show that the execution of that policy caused Plaintiff's injury. *Bey v. Trumbull Cnty. Health Dep't,* No. 4:18CV1166, 2019 WL 950078, at *4 (N.D. Ohio Feb. 27, 2019) (citing *Jordan v. City of Detroit*, 557 F. App'x 450, 454 (6th Cir. 2014) (quoting *Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (internal quotation marks and citation omitted); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, (1978)).

Plaintiff's claim against Defendant Eaton County is utterly conclusory. Conclusory assertions of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Moreover, the claim is directly

8

contrary to the relevant standard. Plaintiff alleges that Defendants Jupin and Turner violated county policy, not that they followed it. Therefore, Defendant Eaton County is properly dismissed.

**VII.    State law claims**

Plaintiff claims that the conduct of Defendants Jupin, Turner, Thomas, and Jenkins also violated his rights under state law. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

In determining whether to retain supplemental jurisdiction over Plaintiff's state law claims, the Court "should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). The Court declines to exercise supplemental jurisdiction over any state law claims. State law claims against municipal defendants are best handled in the state system. Standards of liability and questions of governmental immunity are different on the state law claims.

**VIII.    Motion for appointment of counsel**

Plaintiff has requested a court-appointed attorney (ECF No. 3). Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th

Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel (ECF No. 3) is therefore **DENIED**.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Eaton County, Crowl, and Wrigglesworth will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). Plaintiff's Fourteenth Amendment and state law claims against Defendants Jupin, Turner, Thomas, and Jenkins remain in the case.

An order consistent with this opinion will be entered.

Dated: November 9, 2021         /s/ Robert J. Jonker
                                ROBERT J. JONKER
                                CHIEF UNITED STATES DISTRICT JUDGE