UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAEMON SCHOPPER, #783872,

        Plaintiff,                           Hon. Robert J. Jonker

v.                                         Case No. 1:21-CV-731

RICK SULLIVAN, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion for Summary Judgment (ECF No. 124) and Defendants' Motion for Summary Judgment (ECF No. 128). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's Motion for Summary Judgment (ECF No. 124) be granted, and Defendants' Motion for Summary Judgment (ECF No. 128) be granted in part and denied in part.

## BACKGROUND

Plaintiff is presently incarcerated by the Michigan Department of Corrections at the Parnall Correctional Facility. Plaintiff asserts this action against: (1) Eaton County Deputy Joshua Turner; (2) Michigan State Police Trooper Rasey Jupin; (3) Eaton County Jail Health Administrator William Jenkins; and (4) EMT/Nurse Rick Sullivan. In his amended complaint (ECF No. 61) Plaintiff asserts the following.

On February 3, 2021, Plaintiff was "exiting his girlfriend's apartment" when he observed a van "coming to a stop at a high rate of speed." When the van door opened, Deputy Turner did not identify himself but instead simply ordered his K-9 partner, Tank,

to apprehend Plaintiff.    Tank caught Plaintiff and bit him in the right thigh at which point Plaintiff realized that "the people in the van were the police."    Plaintiff immediately "surrendered, sprawling his hands and feet face down."    Deputy Turner and Trooper Jupin nonetheless "allowed [Tank] to violently attack Plaintiff for numerous minutes, before sitting on Plaintiff's back securing his hands."    Deputy Turner "then ordered [Tank] to attack [Plaintiff's] ankle."

After detaining Plaintiff, Turner and Jupin "refused to make sure [Plaintiff] was taken to the hospital for his injuries by instructing EMS that Plaintiff has to be question[ed] first."    Plaintiff was then transferred to the Eaton County Jail for questioning.    Upon arriving at the jail, Plaintiff "was met by numerous jail staff." When he was examined by Rick Sullivan, Plaintiff requested to "go to the hospital for his injuries."    Plaintiff's request was refused and instead Plaintiff "was forced to lay in a holding cell for 3 days and bleed profusely."

On February 22, 2021, Plaintiff met with Health Administrator Jenkins for a "routine physical."    When Plaintiff requested treatment for his injuries, Jenkins told Plaintiff, "get the fuck out of here."    By March 14, 2021, Plaintiff's leg became infected at which point he was prescribed antibiotics.    Plaintiff has otherwise "received no medical help for his leg, which has lost feeling and is in constant pain."

 Plaintiff alleges that Defendants Turner and Jupin subjected him to excessive force in violation of his Fourteenth Amendment rights and, furthermore, committed assault and battery in violation of Michigan law.    Plaintiff alleges that Defendants Sullivan and Jenkins were deliberately indifferent to his serious medical needs, in

2

violation of his Fourteenth Amendment rights.   Finally, Plaintiff alleges that all four Defendants were negligent in violation of Michigan law.   Defendants now move for summary judgment as to Plaintiff's federal law claims.   Plaintiff has responded to the motions.   The Court finds that oral argument is unnecessary.   *See* W.D. Mich. LCivR 7.2(d).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case."   *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."   *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).   Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."   *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).   The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient.   *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

3

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.   The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).   Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.   Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 993 F.3d at 474.

## ANALYSIS

### I.    Use of Excessive Force

Defendants Turner and Jupin move for summary judgment.   Before addressing their arguments, the Court must clarify the standard by which Plaintiff's claims must be analyzed.   Claims of excessive force are analyzed pursuant to different constitutional

standards depending on the individual's status.   *See, e.g., Hale v. Boyle County*, 18 F.4th 845, 852 (6th Cir. 2021).   Claims asserted by free citizens or arrestees are analyzed under the Fourth Amendment, claims by pretrial detainees are analyzed under the Fourteenth Amendment, and claims by convicted prisoners are assessed under the Eighth Amendment.   *Ibid.*   There is no dispute that the events giving rise to Plaintiff's excessive force claims occurred during the course of his arrest.   Likewise, it does not appear that Plaintiff was detained, on February 3, 2021, pursuant to an arrest warrant. (ECF No. 129-2 at PageID.1174, 1176; ECF No. 129-7 at PageID.1276).   Accordingly, the undersigned concludes that Plaintiff's claims are assessed pursuant to the Fourth Amendment.

When assessing whether an officer's use of force was excessive under the Fourth Amendment, the Court applies "an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants."   *Williams v. Mauer*, 9 F.4th 416, 438 (6th Cir. 2021).   This approach seeks to balance "the consequences to the individual against the government's interests in effecting the seizure."   Three factors are relevant when assessing the reasonableness of the officer's actions: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officer or others; and (3) whether the person is actively resisting arrest or attempting to evade arrest by flight."   This standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case."   *Ibid.*

A.    Defendant Jupin

The only excessive force allegations that Plaintiff advances against Defendant Jupin is that Jupin (1) "allowed" Tank to "violently attack" him and (2) failed to order Tank to disengage after he surrendered.   (ECF No.61 at PageID.328-30).   Jupin first argues that Plaintiff's excessive force claim is barred by the rule announced in *Heck v. Humphrey*, 512 U.S. 477 (1994).   Defendant also asserts that he is entitled to qualified immunity.   The Court is persuaded by the latter argument, but not the former.

1.    *Heck v. Humphrey*

The rule announced in *Heck* is, by now, well known.   If a judgment in favor of a prisoner seeking damages in a § 1983 action would imply the invalidity of a still valid criminal conviction, the prisoner's action cannot proceed.   *Id.* at 486-87.   Interestingly, one of the examples cited by the *Heck* Court of a § 1983 action that would be precluded by this rule is where a prisoner, previously convicted of resisting arrest, later advanced a § 1983 claim for violation of his Fourth Amendment rights.   *Id.* at 486 n.6.   Defendant argues that Plaintiff's conviction for resisting and obstructing precludes his current excessive force claim.

Plaintiff was convicted of violating Michigan Compiled Laws § 750.81d(1), which provides that an individual who "assaults, batters, wounds, resists, obstructs, opposes, or endangers" a law enforcement official is guilty of a felony.   While this statute prohibits "the use or threatened use of physical interference or force" against law enforcement, it also prohibits "a knowing failure to comply with a lawful command." Mich. Comp. Laws § 750.81d(7)(a).

6

Thus, whether a claim for excessive force is precluded by a conviction under § 750.81d turns on the nature of the conduct resulting in such a conviction.   For example, if a person were convicted because he physically assaulted an officer, such might very well preclude a subsequent excessive force claim.   *See, e.g., Cummings v. City of Akron*, 418 F.3d 676, 682-83 (6th Cir. 2005) (where plaintiff had been convicted of resisting arrest, based on a physical struggle between the plaintiff and law enforcement, *Heck* barred plaintiff's use of excessive force claim).   On the other hand, courts have acknowledged that, given the scope of the statute's definition, it is possible to be convicted of § 750.81d based on conduct that is not inconsistent with allegations of excessive force.   *See, e.g., Sevenski v. Artfitch*, 2022 WL 2826818 at *5 n.4 (6th Cir., July 20, 2022) (*Heck* did not bar excessive force claim because plaintiff's conviction under § 750.81d "reasonably could be construed to have been based only on a failure to comply with a 'lawful command'").

This latter rationale is especially relevant here, given that the only unlawful activity to which Plaintiff admitted at his plea hearing was a failure to follow a lawful command.   (ECF No. 129-5, Plea Hearing, Feb. 24, 2022, at 13-15).   In sum, Plaintiff's conviction, based upon his failure to follow a lawful command, does not preclude his use of excessive force claims.   Accordingly, the undersigned recommends that this argument be rejected.

7

2.      Qualified Immunity

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of litigation.   *See Davis v. Scherer*, 468 U.S. 183, 195 (1984).   They can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages and if unjustified lawsuits are quickly terminated.   *Ibid.*   When government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.   *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996).

For a right to be clearly established there must exist "binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point."   *Wenk v. O'Reilly*, 783 F.3d 585, 598 (6th Cir. 2015) (citation omitted).   Court decisions examining matters at a "high level of generality" do not constitute clearly established law because such "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."   *Ibid.* (citation omitted).   The plaintiff need not locate authority in which "the very action in question has previously been held unlawful," but "in light of pre-existing law the unlawfulness [of the defendant's actions] must be apparent."   *Ibid.* (citation omitted).   This does not require the plaintiff to identify "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."   *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

8

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff "to demonstrate both that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time of the conduct 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'"  *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (quoting *al-Kidd*, 563 U.S. at 741.

Defendant Jupin asserts in an affidavit that he was not Tank's handler.   (ECF No. 125-3 at PageID.680).   Plaintiff has presented no evidence suggesting otherwise or suggesting that Jupin has any training in handling police canines.   Furthermore, there is no dispute that Tank's handler, Defendant Turner, was present during the encounter in question.   Plaintiff has failed to identify authority holding or even suggesting that an officer, not trained as a canine handler, has a duty to intervene vis-à-vis a police canine when that canine's handler is present.   This is not surprising as the Sixth Circuit recently found that qualified immunity was appropriate in an almost identical circumstance.   *See Hammond v. County of Oakland, Michigan*, 825 Fed. Appx. 344, 347 (6th Cir., Sept. 4, 2020).   Accordingly, the undersigned recommends that Defendant Jupin is entitled to qualified immunity as to Plaintiff's excessive force claim.

C.    Defendant Turner

Turner asserts that he is entitled to qualified immunity and, furthermore, argues that Plaintiff's "prior guilty plea [to resisting and obstructing] also means his excessive force claims are barred by the doctrine of collateral estoppel."   The Court finds these arguments only partially persuasive.

9

1.    Collateral Estoppel

It is well understood that federal courts must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Haring v. Prosise*, 462 U.S. 306, 313 (1983) (citing 28 U.S.C. § 1738).    The preclusive effect of a state court judgment is determined by state law.    *See, e.g., Peterson v. Heymes*, 931 F.3d 546, 554 (6th Cir. 2019).

Under Michigan law, the proponent of the application of collateral estoppel must demonstrate that: (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the same parties had a full and fair opportunity to litigate the issue; and (3) there was mutuality of estoppel.    *See People v. Trakhtenberg*, 826 N.W.2d 136, 141 (Mich. 2012).

Defendant's argument for the application of collateral estoppel faces at least two hurdles.    First, it is not clear that Michigan courts extend preclusive effect to convictions based upon guilty pleas.    *See, e.g., Lichon v. American Universal Ins. Co.*, 459 N.W.2d 288, 299 (Mich. 1990) (court held that estoppel did not apply in the context of a no-contest plea but expressly "ma[d]e no ruling as to the preclusive effect of a conviction based upon a guilty plea").    Defendant has identified no authority establishing that Michigan law extends preclusive effect to guilty pleas or any facts "litigated" pursuant thereto.    Even if Defendant could overcome this difficulty, however, his argument still falls short because he has failed to demonstrate precisely what fact(s), essential to Plaintiff's criminal conviction, were actually litigated.

10

At Plaintiff's plea hearing, the only fact to which Plaintiff admitted was that he failed to stop when instructed to do so.   (ECF No. 129-5, Plea Hearing, Feb. 24, 2022, at 13-15).   There is no indication, however, whether Plaintiff failed to comply with an instruction to stop at the outset of his encounter with law enforcement (i.e., prior to being apprehended by Tank) or instead failed to comply with an instruction to "stop" at some later point in the encounter.   Stated differently, while Defendant can arguably establish that a fact was "actually litigated" at Plaintiff's plea hearing, Defendant cannot establish precisely what fact was litigated.   Accordingly, the undersigned recommends that Defendant's argument for the application of collateral estoppel be rejected.

2.    Qualified Immunity

Plaintiff's excessive force claims against Defendant Turner is a play in three acts: (1) Turner, without first identifying himself, instructed Tank to apprehend Plaintiff; (2) once Tank apprehended Plaintiff, Turner allowed Tank to continue to attack Plaintiff; and (3) after Plaintiff surrendered, Turner nevertheless ordered Tank to bite Plaintiff's ankle.   It is necessary to consider each of these instances separately.   *See, e.g.,* *Hammond*, 825 Fed. Appx. at 346 (when a plaintiff claims that excessive force was employed multiple times, "the court must segment the incident into its constituent parts and consider the officer's entitlement to qualified immunity at each step along the way"). Before assessing the separate portions of Plaintiff's excessive force claim, a discussion of the evidence, interpreted in a light most favorable to Plaintiff, is necessary.[1]

---

1 Defendant Turner has submitted an affidavit as well as a copy of the police reports he authored concerning the encounter with Plaintiff.   (ECF No. 129-2 at PageID.1170-77).

On or about January 23, 2021, a shooting occurred at a Citgo gas station in Delta Township.  (ECF No. 125-2 at PageID.674).  An investigation into this incident revealed Plaintiff as a suspect.  (ECF No. 125-2 at PageID.674; ECF No. 129-2 at PageID.1171).  Because of Plaintiff's known "criminal history, including his history of flight and violent activities," a Special Response Team (SRT) was assembled to effect Plaintiff's arrest.  (ECF No. 125-2 at PageID.674-76; ECF No. 129-2 at PageID.1171-72).  On February 3, 2021, the SRT approached Plaintiff's residence in an unmarked vehicle.  (ECF No. 129-2 at PageID.1171, 1174).

At approximately 1:30 p.m. that afternoon, Plaintiff exited his residence.  (ECF No. 129-1 at PageID.1129).  Plaintiff started his vehicle's engine via a remote starter and began walking to his vehicle.  (*Id.*).  Plaintiff was carrying a firearm in his pocket.  (*Id.* at PageID.1138-39).  As Plaintiff approached his vehicle, he heard another vehicle come to a stop.  (*Id.* at PageID.1129).  Plaintiff observed that it was a van with its door open.  (*Id.* at PageID.1129-30).  Plaintiff could discern "the outline of figures inside" the van.  (*Id.*).  Plaintiff could not identify the individuals in the van but had already determined to run regardless of their identity.  (*Id.* at PageID.1129-32).

---

Defendant has not argued that his police reports are admissible but has instead asserted, in his affidavit, that his police reports accurately reflect his actions during the events in question.  (*Id.* at PageID.1171).  The Court finds this is sufficient to incorporate into Turner's affidavit those portions of his police reports that reflect Turner's actions and his own personal observations and perceptions.  *See, e.g., Kyle v. Bush*, 2019 WL 958425 at 3 n.3 (W.D. Mich., Jan. 30, 2019).

Plaintiff "instantly" began to run away but fell after only a few steps.  (*Id.* at PageID.1130).   Before he fell, however, Plaintiff's weapon came out of his waistband and fell onto the ground.  (*Id.* at PageID.1138-39).   Defendant Jupin observed the firearm fall from Plaintiff's waistband as Plaintiff attempted to flee.  (ECF No. 125-3 at PageID.679).   Plaintiff attempted to get up and continue running but was apprehended by Tank before he could do so.  (ECF No. 129-1 at PageID.1130-31).   Plaintiff was not aware of Tank's presence until after he was apprehended by Tank.  (*Id.* at PageID.1130).   Plaintiff testified in his deposition that he did not hear any warning or instruction to stop prior to being apprehended by Tank.  (*Id.* at PageID.1137).   Turner, on the other hand, asserts that before releasing Tank he instructed Plaintiff to stop, an instruction Plaintiff ignored.  (ECF No. 129-2 at PageID.1174).   For purposes of the present analysis, the Court assumes that Turner "believed he was dealing with a person who was disobeying orders."  *Artfitch*, 2022 WL 2826818 at *4 n.2.

As soon as Plaintiff was apprehended by Tank he "gave up" and "sprawled out" on the ground "at [which] point [Turner] ordered [Tank] to disengage."  (ECF No. 129-1 at PageID.1130-32; ECF No. 132 at PageID.1697).   From this point forward, Plaintiff did not resist law enforcement.  (ECF No. 129-1 at PageID.1132).   Defendants Turner and Jupin approached Plaintiff with each grabbing one of Plaintiff's arms.  (*Id.* at PageID.1131).   Turner and Jupin did not immediately handcuff Plaintiff but rather held Plaintiff down at which point Turner instructed Tank to "bite [Plaintiff's] ankle."  (*Id.* at PageID.1131-32, 1136).   Tank complied and "grabbed [Plaintiff] by the ankle and shook [him] profusely while [Turner and Jupin] held [Plaintiff] flat to the ground."  (*Id.*

13

at PageID.1132).   Tank "viciously" shook Plaintiff for "one to two minutes" and pulled his underwear and pants down to his ankles leaving Plaintiff to lay "in the snow naked for approximately a minute to two minutes."   (*Id.*).

Defendant Turner has also submitted video evidence recorded by the body camera of a police officer who arrived at the scene after Plaintiff was apprehended by Tank and detained by Defendants Turner and Jupin.   (ECF No. 129-4, Exhibit 4).   The portion of the video relevant to Plaintiff's excessive force claim shows the officer walking up to where Plaintiff is laying on the ground.   Two men, presumably Defendants Turner and Jupin, appear to be holding Plaintiff down as a dog (presumably Tank) appears to be biting Plaintiff on the ankles.   Plaintiff's underwear and pants appear to be pulled down around his ankles.   The unidentified officer can be heard saying something indiscernible after which she quickly walks away.

1.    Initial Apprehension

As courts recognize, "[d]eployment of a well-trained police dog is among the various forms of force available to law enforcement, that is a comparatively measured application of force, which does not carry with it a substantial risk of causing death or serious bodily harm."   *Puskas v. Delaware County, Ohio*, 56 F.4th 1088, 1094 (6th Cir. 2023).   When considered in light of the factors identified above, the Court finds that Defendant Turner's actions vis-à-vis Plaintiff's initial apprehension were not unreasonable.

The SRT arrived at Plaintiff's residence to arrest Plaintiff for his alleged involvement in a recent shooting.  The SRT was aware, before arriving at Plaintiff's residence, that Plaintiff had an extensive criminal history, including crimes of violence, as well as a history of flight.  When the SRT arrived, Plaintiff was walking toward his vehicle, which was already running.  Plaintiff concedes that he began to flee the moment he observed the van and well before he was even aware of Tank's presence. Plaintiff has presented no evidence that Tank was deployed before he started fleeing.

Considering the circumstances, the undersigned finds that Defendant Turner's actions were not unreasonable.  *See, e.g., Puskas*, 56 F.4th at 1095 ("the Fourth Amendment does not require officers to use the best technique available as long as their method is reasonable under the circumstances").  In sum, because the evidence regarding Plaintiff's initial apprehension, even viewed in a light most favorable to Plaintiff, fails to establish that Plaintiff suffered a violation of his Fourth Amendment rights, the undersigned recommends that Defendant Turner is entitled to qualified immunity as to this aspect of Plaintiff's claim.

2.    Continued Attack

In his amended complaint, Plaintiff alleges that once he was apprehended by Tank he "surrendered" after which Defendant Turner failed to "call [Tank] off" and instead "allowed [Tank] to violently attack" him.   Plaintiff's claim that Defendant Turner failed to "call [Tank] off" is refuted by Plaintiff's own sworn statement and deposition testimony.   As noted above, Plaintiff claims that once he was apprehended by Tank he "gave up" and "sprawled out" on the ground "at [which] point [Turner] ordered [Tank] to

15

disengage."

To the extent that Plaintiff's claim is interpreted as asserting that Turner unreasonably delayed in ordering Tank to disengage, the result is the same.   Plaintiff has presented no evidence concerning the length of time that passed between his initial apprehension by Tank and Turner's instruction to Tank to disengage.   Considering the circumstances, it would not have been unreasonable for Turner to wait until he had physically secured Plaintiff before ordering Tank to disengage.   In this respect, Plaintiff has presented no evidence even suggesting that Turner unreasonably delayed securing Plaintiff and ordering Tank to disengage.

Accordingly, with respect to this component of Plaintiff's claim, the undersigned recommends that Defendant Turner is entitled to qualified immunity.

3.      Post-Surrender Attack

Finally, Plaintiff alleges in his amended complaint that following his surrender, Defendant Turner "ordered [Tank] to attack [Plaintiff's] ankle."   As discussed above, Plaintiff asserts that once he was apprehended by Tank he no longer resisted. Defendants Turner and Jupin then approached Plaintiff and grabbed him by the arms. Turner and Jupin did not immediately handcuff Plaintiff but rather held Plaintiff down at which point Turner instructed Tank to "bite [Plaintiff's] ankle."   Tank complied and "grabbed [Plaintiff] by the ankle and shook [him] profusely while [Turner and Jupin] held [Plaintiff] flat to the ground."   Tank "viciously" shook Plaintiff for "one to two minutes" and pulled his underwear and pants down to his ankles leaving Plaintiff to lay "in the snow naked for approximately a minute to two minutes."   In addition to

16

Plaintiff's testimony, the video evidence submitted by Defendant, as noted above, is not inconsistent with Plaintiff's version of events.

It has been long established in the Sixth Circuit that individuals "who pose no safety risk to the police" enjoy the right under the Fourth Amendment "to be free from gratuitous violence during arrest." *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006). Defendant Turner acknowledges that during his encounter with Plaintiff he ordered Tank to re-engage Plaintiff on the lower leg. (ECF No. 129-2 at PageID.1174). According to Turner, this action was necessitated by Plaintiff's continued efforts to resist. (*Id.*). Plaintiff has presented facts, however, sufficient to create a genuine dispute whether Tank's re-engagement was reasonable under the circumstances or instead constituted gratuitous violence contrary to the Fourth Amendment. Accordingly, the undersigned recommends that with respect to this aspect of Plaintiff's excessive force claim, Defendant's motion for qualified immunity and summary judgment be denied.

## II.   **Denial of Medical Treatment**

Plaintiff alleges that, following his arrest by Defendants Turner and Jupin, he was denied medical treatment for the bites he sustained from Tank. Specifically, Plaintiff alleges that upon his arrival at the Eaton County Jail, Defendant Sullivan refused to provide him with medical treatment and, furthermore, denied his request to be taken to a hospital for medical treatment. Plaintiff further alleges that on February 22, 2021, Defendant Jenkins refused to provide him with medical treatment.

As previously noted, there is no indication that on the date in question Plaintiff was detained pursuant to an arrest warrant.   Likewise, it is not clear from the record when Plaintiff was first brought before a judicial officer for a determination of whether there existed probable cause to support his detention.   Accordingly, the Court cannot determine the point at which Plaintiff transitioned from arrestee to pretrial detainee. *See, e.g., Aldini v. Johnson*, 609 F.3d 858, 865 (6th Cir. 2010) (recognizing that the distinction between arrestee and pretrial detainee is whether the individual has had a "judicial determination of probable cause" to support his detention).   This would make analysis of an excessive force claim difficult as the applicable standard would be unknown.   In the context of a denial of medical treatment claim no such difficulty is presented.   As the Sixth Circuit recently indicated, a claim by an arrestee that he was denied necessary medical treatment is assessed under the Fourteenth Amendment.   *See Colson v. City of Alcoa, Tennessee*, 37 F.4th 1182, 1187 (6th Cir. 2022).

Previously, deliberate indifference claims under the Eighth and Fourteenth Amendments were analyzed "under the same rubric."   *Brawner v. Scott County, Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021).   Following the decision by the Supreme Court in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), however, the analysis applicable to these claims has diverged.   Specifically, with respect to Fourteenth Amendment deliberate indifference claims, the second prong of the analysis has been modified.

With respect to the initial prong of the analysis, both Eighth and Fourteenth Amendment claims require the plaintiff to demonstrate that he was experiencing a serious medical need.   The second prong of the analysis concerns what a plaintiff must

18

prove an official knew or should have known regarding his need for medical care.    This is where the two analyses diverge.    The Eighth Amendment standard requires the plaintiff to establish that the defendant "was *subjectively* aware" of the serious medical need and disregarded such by failing to "take reasonable measures to abate it."    *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).    This requires the plaintiff to demonstrate that the defendant acted with "deliberateness tantamount to intent to punish."    *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).

The Fourteenth Amendment standard, however, because pretrial detainees have not been convicted and, therefore, cannot by "punished," requires a slightly lesser showing.    A plaintiff need only show that the defendant acted with recklessness, described as "more than negligence but less than subjective intent – something akin to reckless disregard."    *Mercer v. Athens County, Ohio*, 72 F.4th 152, 161 (6th Cir. 2023). Stated differently, a plaintiff must demonstrate that the defendant "acted deliberately (not accidentally), and also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."    *Greene v. Crawford County, Michigan*, 22 F.4th 593, 606 (6th Cir. 2022).    Furthermore, the Court must "consider each defendant individually because we cannot impute knowledge from one defendant to another."    *Mercer*, 72 F.4th at 161.

Defendants argue that Plaintiff's claim must be analyzed under both the Fourteenth and Eighth Amendment standards.    (ECF No. 129 at PageID.1103).    The Court is not persuaded.    As Defendants note, Plaintiff pled guilty on February 24, 2022, to several offenses.    (ECF No. 129-5, Plea Transcript, Feb. 24, 2022).    According to

19

Defendants, Plaintiff's guilty plea rendered him a convicted felon subject to the Eighth Amendment's protections.  This may be accurate, but Plaintiff's guilty plea occurred more than one year after the date of the events giving rise to Plaintiff's deliberate indifference claims.  As noted above, Plaintiff alleges that on February 3, 2021, Defendant Sullivan denied his request to be taken to a hospital for medical treatment. Plaintiff further alleges that on February 22, 2021, Defendant Jenkins refused to provide him with medical treatment.  Because these events occurred prior to Plaintiff's conviction, his deliberate indifference claims are analyzed pursuant to the Fourteenth Amendment.

A.    Medical Evidence

Immediately following his arrest, Plaintiff was examined by EMS Primary Care Provider Steven Casciotti.  (ECF No. 129-8 at PageID.1339-46).  Casciotti asserts the following.[2]  Plaintiff reported that he had been bitten on the upper and lower portions of his right leg.  (ECF No. 129-8 at PageID.1345).  An examination of the lower portion of Plaintiff's leg revealed a "possibl[e] shallow puncture [wound] with no active bleeding noted" with "mostly superficial damage to the skin above the ankle with some swelling, bruising and abrasions."  (*Id.*).  An examination of the upper portion of Plaintiff's leg

---

2  Casciotti has submitted an affidavit as well as a copy of the "Patient Care Report" he authored on the day in question.  (ECF No. 129-8 at PageID.1339-46).  In his affidavit, Casciotti asserts that the Patient Care Report "accurately reflects my contact with [Plaintiff] on this date."  (*Id.* at PageID.1340).  The Court finds this is sufficient to incorporate into Casciotti's affidavit those portions of his report that reflect Casciotti's actions and his own personal observations and perceptions.  *See, e.g., Bush*, 2019 WL 958425 at 3 n.3.

likewise revealed injuries that were "primarily superficial in nature." (*Id.*). Casciotti offered to bandage Plaintiff's wounds, but Plaintiff declined. (*Id.*). Plaintiff also declined an offer to be transported to a hospital. (*Id.*). The video evidence submitted by Defendants shows Plaintiff, several minutes after his detention, enter an ambulance several minutes after his detention. (ECF No. 129-8 at Exhibit 4). The video, however, provides no indication what happened inside the ambulance.

Plaintiff offers a different version of events. Specifically, Plaintiff testified as follows. Casciotti refused his requests to be transported to a hospital for treatment. (ECF No. 129-1 at PageID.1139-42). Plaintiff received no medical treatment from Casciotti because law enforcement officials instructed Casciotti that Plaintiff had to be questioned before he could receive medical treatment. (*Id.* at PageID.1143). After exiting the ambulance, Plaintiff was transported to a "substation" for questioning. (*Id.* at PageID.1143-45). While detained at the substation, the pain in Plaintiff's injured leg "just kept getting worse and worse and worse." (*Id.* at PageID.1145). Plaintiff declined to speak with law enforcement, but instead again requested to be transported to a hospital for medical treatment. (*Id.*). Law enforcement, however, refused and instead transported Plaintiff to the Eaton County Jail. (*Id.*). As soon as he arrived at the jail, Plaintiff again requested to be transported to a hospital, but this request was refused. (*Id.* at 1146). Approximately thirty minutes later, Defendant Sullivan entered Plaintiff's cell. (*Id.*). Plaintiff immediately requested to be transported to a hospital for medical treatment. (*Id.*). In response, Sullivan simply exited Plaintiff's cell without providing Plaintiff with medical treatment. (*Id.*).

Neither Defendant Sullivan nor Defendant Jenkins have provided an account, either via testimony or affidavit, regarding the events in question.   Defendants have, however, submitted documentary evidence regarding Plaintiff's medical treatment while at the Eaton County Jail.   This evidence, however, does not advance Defendants' cause.

Upon Plaintiff's arrival at the Eaton County Jail, Plaintiff participated in a medical screening, which indicated that Plaintiff had "visible signs of injury. . .[caused by a] K9 dog bite. . .requiring immediate treatment or care."   (ECF No. 129-9 at PageID.1348).   Plaintiff requested to be transported to a hospital.   (*Id.* at PageID.1349).   This request was denied, however, on the ground that Plaintiff "has been seen by EMT."[3]   (*Id.*).

On February 22, 2021, Plaintiff was examined by someone at the Eaton County Jail.   (ECF No. 129-10 at PageID.1354-57).   The handwriting in these records is illegible, however.   (*Id.*).   Plaintiff testified that he was examined by Defendant Jenkins on February 22, 2021.   (ECF No. 129-1 at PageID.1148).   According to Plaintiff, Jenkins "just told [him] to sign these releases so that way he could have access to [his] medical records."   (*Id.*).   Plaintiff further testified, however, that when he attempted to discuss with Jenkins "the injuries to [his] leg," Jenkins declined to assist Plaintiff but instead simply instructed Plaintiff to "get the fuck out of here."   (*Id.*).

---

3 This comment merely begs the question, if Plaintiff had been adequately treated by the EMT why did he nevertheless require immediate treatment.

22

On March 12, 2021, Plaintiff reported that he "can't feel anything in back of thigh [and] around ankle."    (ECF No. 129-10 at PageID.1358).    Plaintiff requested "something for pain" and was prescribed Keflex.[4]   (ECF No. 129-10 at PageID.1353, 1358).   On August 24, 2021, Plaintiff participated in an EMG examination the results of which were "normal."   (*Id.* at PageID.1362-64).

B.    Defendant Sullivan

Plaintiff alleges that upon his arrival at the Eaton County Jail, on February 3, 2021, Defendant Sullivan declined to provide him with medical treatment and also denied his request to be taken to a hospital for medical treatment.   The evidence discussed above, interpreted in a light most favorable to Plaintiff, compels the conclusion that there exist genuine factual disputes, which preclude granting summary judgment at this juncture.

The first prong of the analysis requires Plaintiff to demonstrate that he was experiencing a serious medical need.   This prong is easily satisfied by Plaintiff's testimony as well as the documentary evidence indicating that upon his arrival at the jail, Plaintiff was experiencing "visible signs of injury. . .[caused by a] K9 dog bite. . .requiring immediate treatment or care."

---

4 Keflex is a "cephalosporin antibiotic. . .used to treat a wide variety of bacterial infections."   *See* Keflex – Uses, Side Effects, and More, available at https://www.webmd.com/drugs/2/drug-6859/keflex-oral/details (last visited on Feb. 5, 2024).

With respect to the second prong, Plaintiff must establish that Defendant acted deliberately and recklessly "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." Again, the jail official who examined Plaintiff shortly before his interaction with Defendant Sullivan reported that Plaintiff required "immediate" medical treatment. Defendant nevertheless opted to deny Plaintiff medical treatment. A reasonable juror could conclude, therefore, that Defendant Sullivan violated Plaintiff's Fourteenth Amendment rights. Accordingly, the undersigned recommends that Defendant Sullivan's motion for summary judgment be denied.

C.    Defendant Jenkins

Plaintiff alleges that, on February 22, 2021, Defendant Jenkins refused to provide him with medical treatment. For essentially the same reasons articulated in the preceding section, the undersigned recommends that Defendant Jenkins' motion for summary judgment be denied. Considering that Plaintiff would be prescribed antibiotics barely two weeks after his encounter with Jenkins, a reasonable juror could conclude that as of February 22, 2021, Plaintiff was still experiencing a serious medical need. Likewise, a juror could reasonably conclude that by rejecting Plaintiff's request for medical treatment, Jenkins was acting deliberately and recklessly "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."

D.    Delay in Medical Treatment

In *Napier v. Madison County, Kentucky*, 238 F.3d 739 (6th Cir. 2001), the court held that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed."   *Id.* at 742.   While not clearly articulated, there is a suggestion in Defendants' brief that they are entitled to relief because Plaintiff ultimately received appropriate medical treatment, and he has failed to present evidence that the delay in treatment resulted in any "long-lasting issues."   (ECF No. 129 at PageID.1107).

The undersigned, however, recommends that any such argument be rejected for two reasons.   First, Defendants have waived this argument by failing to sufficiently develop such.   *See, e.g., In re K & D Industrial Services Holding Co., Inc.*, 2021 WL 4350054 at *2 (E.D. Mich., Mar. 12, 2021) (recognizing that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived. . .[because] [j]udges are not like pigs, hunting for truffles that might be buried in the record").   Second, the rule articulated in *Napier* is inapplicable presently because a reasonable juror could conclude that Plaintiff, having recently been bitten by a police canine, was experiencing an obvious need for medical treatment.   *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 899-900 (6th Cir. 2004) ("where a plaintiff's claims arise from an injury or illness so obvious that even a layperson would easily recognize the necessity for a doctor's attention, the plaintiff need not present

25

verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated").

## III.   Official Capacity Claims

Finally, Defendants Sullivan, Jenkins, and Turner move to dismiss Plaintiff's claims asserted against them in their official capacity.   In his original complaint, Plaintiff sued Eaton County.   (ECF No. 1).   The Court dismissed Plaintiff's claims against Eaton County on the ground that Plaintiff had failed to articulate how the County caused his injuries.   (ECF No. 10 at PageID.47-48).   Plaintiff's official capacity claims against Defendants Sullivan, Jenkins, and Turner are essentially claims against Eaton County and are, therefore, subject to dismissal for the same reasons the Court previously articulated.   *See, e.g., Vittetoe v. Blount County, Tennessee*, 861 Fed. Appx. 843, 851-52 (6th Cir., June 17, 2021).   Accordingly, the undersigned recommends that Plaintiff's official capacity claims against Defendants Sullivan, Jenkins, and Turner be dismissed.

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned recommends that Defendant's Motion for Summary Judgment (ECF No. 124) be granted and Defendants' Motion for Summary Judgment (ECF No. 128) be granted in part and denied in part.   Specifically, the undersigned recommends that (1) Plaintiff's claims against Defendant Jupin be dismissed; (2) Plaintiff's official capacity claims against Defendants Sullivan, Jenkins, and Turner be dismissed; (3) Plaintiff's personal capacity claims alleging denial of medical treatment against Defendants Sullivan and Jenkins proceed forward; and

(4) Plaintiff's official capacity claims against Defendant Turner be dismissed save the claim that Defendant Turner used excessive force by ordering Tank to engage Plaintiff after he had surrendered and been detained which proceed forward.   The undersigned further recommends that Plaintiff's state law negligence claims proceed forward as Defendants have advanced no argument for their dismissal.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: February 6, 2024

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge